UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELIZABETH MCELROY, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No.: 2:15-cv-00120-JHE |
| CITY OF BESSEMER, ALABAMA, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiffs Elizabeth McElroy[2] and Mamie Powell initiated this action in the Circuit Court of Jefferson County, Alabama, Bessemer Division, against Defendants City of Bessemer, Alabama and Officer Gabriel Kinderknecht. (Doc. 1-1). In their First Amended Complaint, Plaintiffs assert a 42 U.S.C. § 1983 claim for excessive force and state law claims for wrongful death and intentional infliction of emotional distress. (*Id.*). Defendants removed the action to this Court and now move to dismiss the First Amended Complaint. (Docs. 1-1 & 5). The motion is fully briefed and ripe for review. (Docs. 5, 6, 9, & 10). For the reasons stated below, the motion, (doc. 5), is **GRANTED IN PART AND DENIED IN PART**.

**I. Standard of Review**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.

[2] Plaintiff Elizabeth McElroy is listed as the administrator of the Estate of Parish Laconley Powell, deceased, in the First Amended Complaint. (Doc. 1-1 at 72).

1

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion [s]' devoid of 'further factual enhancement.'" *Id*. (citing Bell Atl. Corp., 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. Factual Background

The First Amended Complaint alleges, in pertinent part, as follows:

7. On May 15, 2012, the now deceased Mr. Powell was admitted to [sic] into UAB for an incident caused by high blood pressure and being a brittle diabetic. Mr. [sic] Parrish had apparently been acting strangely, and he had been lethargic to the point of even passing out in his kitchen, which prompted the May 15th call to 911.[3]

---

[3] An episode where a diabetic becomes groggy and passes out is almost definitively characteristic of having low blood sugar.  (footnote in First Amended Complaint)

8. On May 17, 2012, Mr. Powell was with his mother, Mamie Powell, at their home.[4] Mr. Powell began acting in a manner which the family knew was a sign to check both his blood pressure and blood sugar. As the family thought, he had high blood pressure and low blood sugar, and thinking it was proper to do so, Mr. Powell's mother called 911 to see if they could take him to the hospital.[5]

9. After Mr. Powell's mother called 911, both the Fire Department and the Police Department were dispatched to the Powell home. The Fire Department arrived first. They attempted to attend to Mr. Powell, but Mr. Powell would not allow the attending paramedics [sic] take his blood pressure. Mr. Powell instead went to the kitchen to get a glass of water.

10. The Bessemer Police Department then arrived on the scene. The Fire Department personnel had exited the home and were on the front porch, where one of them told Mr. Powell's brother, Tim Powell, that Mr. Powell had a skillet in his hand.

11. Two (2) officers from the Bessemer Police Department entered the home and converged on the kitchen area where Mr. Powell, who was clearly disoriented but not acting erratically, was located. During a short conversation between Mr. Powell and the officers at least three (3) shots were fired. One (1) went into a deep freezer, one (1) through a window, and the third into the abdomen of Mr. Powell. This all occurred while Mamie Powell was in the adjoining room, where she heard her son being struck by the bullet.

12. Mr. Powell was taken to the University of Alabama at Birmingham Hospital, where he died as a direct result of the wounds inflected by the gunshot of Bessemer Police Officer Gabriel Kinderknecht.

(Doc. 11 at 73-74).

### III. Analysis

In their response to the motion to dismiss, Plaintiffs concede their § 1983 excessive force claim against the City of Bessemer, (*see* doc. 9 at 3), and their state law claim for intentional infliction of emotional distress, (*see id.* at 7), are due to be dismissed. Accordingly, the motion

---

[4] It should be noted Mr. Powell's mother, who is 83, is physically incapable of taking care of her son. (footnote in First Amended Complaint)

[5] This was not an emergency, and the 911 operator was so informed. This call was merely to arrange transportation. As Mrs. Powell put it to counsel, "I called them for help, and they killed him." (footnote in First Amended Complaint)

to dismiss is **GRANTED** as to these claims, and the undersigned will only address the § 1983 claim against Officer Kinderknecht and the state law wrongful death claim against the City of Bessemer.

### A. Section 1983 Excessive Force Claim – Statement of Claim[6]

Defendants argue the remaining § 1983 excessive force claim should be dismissed because Plaintiffs' allegations do not meet applicable pleading standards as articulated in Federal Rule of Civil Procedure 8 and Supreme Court case law, specifically *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). (Docs. 6 at 13 &19 at 3-4).

Plaintiffs have presented allegations sufficient to give rise to an excessive force claim. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (explaining pleadings for §1983 cases involving defendants who are able to assert qualified immunity as a defense are now held to comply with the standards described in *Iqbal*). To state an excessive force claim under the Fourth Amendment, a plaintiff must allege a seizure occurred and that "the force used to effect the seizure was unreasonable." *Bryan v. Spillman*, 217 Fed. App'x 882, 885 (11th Cir. 2007). The Supreme Court has explained that an officer's use of deadly force is unreasonable unless the individual is posing an immediate threat to the officer or others, and the officer gives a warning if feasible. *Tennessee v. Garner*, 471 U.S. 1, 12 (1985). While the ultimate question is whether the officer's use of force was "reasonable" based on the specific facts of the case, courts consider three factors in assessing reasonableness. *Terrell v. Smith*, 668 F.3d 1244, 1251 (11th Cir. 2012) (citing *Garner*, 471 U.S. at 11-12 and *Scott v. Harris*, 550 U.S. 372, 383 (2007)). The Supreme

---

[6] To the extent Defendants argue the wrongful death claim against the City of Bessemer should be dismissed for failure to comply with applicable pleading standards, the argument is moot because the claim is due to be dismissed as explained below.

Case 2:15-cv-00120-JHE   Document 18   Filed 04/13/15   Page 5 of 11

Court has explained an officer may use deadly force when he:

> (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious physical harm;" (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

*Terrell*, 668 F.3d at 1251 (quoting *Vaughan v. Cox*, 343 F.3d 1323, 1329-30 (11th Cir. 2003)).

Plaintiffs allege Officer Kinderknecht used deadly force to seize Mr. Powell and further allege facts demonstrating the use of such force was unreasonable given the circumstances. Specifically, Plaintiffs allege that, on May 17, 2012, in response to a non-emergency 911 call requesting assistance in taking Mr. Powell to the hospital, two police officers arrived at Mr. Powell's residence and entered the home. (Doc. 1-1 at 73-74). At this time, fire department personnel who had arrived on the scene first, had exited the home and were on the front porch. (*Id.* at 74). One of them told Mr. Powell's brother that Mr. Powell had a skillet in his hand. (*Id.*). Plaintiffs further allege, once in the home, the police officers entered the kitchen where Mr. Powell had gone to get a glass of water. (*Id.*). Due to his medical condition, Mr. Powell was "clearly disoriented, but not acting erratically." (*Id.*). At this time, "during a short conversation" three shots were fired. (*Id.*). One of the shots from Officer Kinderknecht, struck Mr. Powell in the abdomen. (*Id.*). Mr. Powell was taken to the hospital, where he died as a direct result of the gunshot wound. (*Id.*). Plaintiffs allege Officer Kinderknecht's actions were willful, malicious, intentional, and in bad faith. (*Id.*).

Defendants argue the First Amended Complaint does not meet the pleading standard because there are no detailed allegations regarding the nature of the confrontation or the circumstances surrounding the discharge of the weapon. (*See* docs. 6 at 9). Such detail is not required at this stage. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Although a

5

plaintiff may not rely on mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," "detailed factual allegations" are not required. *Iqbal*, 556 U.S. at 678.  Rule 8(a)(2) only requires "a short and plain statement of the claim showing the pleader is entitled to relief."  The plaintiffs have provided as much.   Plaintiffs explain the circumstances surrounding Officer Kinderknecht's presence at Mr. Powell's home and allege that, during a conversation, officers fired three shots, one of which came from Officer Kinderknecht and struck Mr. Powell in the abdomen, directly resulting in his death.  (*See* doc. 1-1 at 73-74).  These allegations, when taken as true, establish Officer Kinderknecht seized Mr. Powell and that seizure was unreasonable considering the circumstances.  The additional allegations that Fire Department personnel, who exited the residence when the police arrived, told Mr. Powell's brother that Mr. Powell had a skillet in his hand, (doc. 1-1 at 74), and that Mr. Powell was "clearly disoriented but not acting erratically," (*id.*), do not change this result.  These two facts alone do not establish the type of threat provocation that would justify the use of deadly force.  There are no facts indicating Mr. Powell was trying to escape or that it was not feasible to provide a warning before the use of deadly force.  (*See id.*).  Based on the facts as presented in the complaint, it was unreasonable for Officer Kinderknecht to believe deadly force was necessary to seize Mr. Powell.  The allegations raise more than "a sheer possibility that a defendant [] acted unlawfully" when fatally shooting Mr. Powell, *Iqbal*, 556 U.S. at 678, and are more than a "formulaic recitation of the elements" of the claims, *Twombly*, 550 U.S. at 555, as Defendants suggest. Accordingly, Defendants' motion to dismiss based on the pleading standard is **DENIED**.

### B. Section 1983 Excessive Force Claim – Qualified Immunity

Defendants next argue the § 1983 excessive force claim against Officer Kinderknecht should be dismissed on the basis of qualified immunity.  Qualified immunity "insulates

government officials from personal liability for money damages for actions taken in good faith pursuant to their discretionary authority." *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir. 1990) (citing *Horlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotation marks omitted).  The basic premise of the doctrine is for immunity to harbor government officials from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

A three-part analysis determines whether a government agent is eligible for qualified immunity.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1346-47 (11th Cir. 2002).  First, the government official must show that he was engaged in a "discretionary function" when he committed the allegedly unlawful act.  *Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004).  Once this burden is met, it "shifts to the plaintiff to show that qualified immunity is not appropriate."  *Lee*, 284 F.3d at 1194 (citation omitted).  To avoid the application of qualified immunity, the plaintiff must satisfy the two-prong test articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), showing: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation, *id.* at 201.  The Supreme Court has since explained that "judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in decided which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, -- U.S. --, 129 S. Ct. 808, 181 (2009).

For purposes of evaluating qualified immunity, the parties do not dispute that Officer Kinderknecht was engaged in a discretionary function when the alleged unlawful act was committed. Officer Kinderknecht was responding to the 911 call and attempting to attend to Mr. Powell's medical condition, both tasks undertaken pursuant to the performance of his duties and within the scope of his authority. (Doc. 9 at 5-7); *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). Therefore, the burden shifts to the plaintiffs to plead facts demonstrating Officer Kinderknecht violated a constitutional right that was clearly established in order to strip him of qualified immunity. *See Saucier*, 533 U.S. at 201; *Maldonado v. Snead*, 168 Fed. Appx. 373, 378 (11th Cir. 2006). In determining whether the officer's conduct violated a constitutional right, the court views the facts in the light most favorable to the party asserting the injury. *Id.*

As explained above, the plaintiffs have sufficiently pled facts to state a constitutional violation claim against Officer Kinderknecht. The next question is whether the constitutional right at issue was "clearly established" at the time of the challenged conduct. *Saucier*, 533 U.S. at 201. Defendants do not directly address this question, but continue to argue Plaintiffs have not provided enough detail in their pleading to make this evaluation. (*See* docs. 6 at 9 & 10 at 5-7). As the Eleventh Circuit recently explained, pleadings in §1983 cases involving defendants who are able to assert qualified immunity as a defense now must comply with the standards described in *Iqbal*, not a heightened pleading standard. *Randall*, 610 F.3d at 709. Defendants cite only cases decided prior to the Eleventh Circuit's decision in *Randall v. Scott*, which explains that cases reaffirming a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity were effectively overturned by *Iqbal*. 610 F.3d at 709; *see Brown v. Benefield*, 757 F. Supp. 2d 1165, 1172 (M.D. Ala. 2010) (recognizing that, until recently, there was a heightened pleading standard for § 1983 cases, but that is no longer the law in the Eleventh

Circuit).

Turning now to whether the allegedly violated right was "clearly established," the Supreme Court has explained "clearly established law" is law that is sufficiently established as to provide public officials with "fair notice" that the conduct alleged is prohibited. *Hope v. Pelzer*, 536 U.S. 730 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent" (internal citations and quotation marks omitted)).

It is clearly established that an officer may not use deadly force in a situation that requires less-than-lethal force. *Tennessee v. Garner*, 471 U.S. 1, 12 (1985) (holding an officer cannot use deadly force to seize a suspect unless the individual is posing an immediate threat to the officer or others, and then only after a warning has been given if feasible).  Because the Fourth Amendment protects citizens from "unreasonable" seizures, the use of deadly force must be reasonable under the circumstances. *Vaughn v. Cox*, 343 F.3d 1323, 1329 (11th Cir. 2003). Using deadly force in a situation that clearly would not justify its use is unreasonable under the Fourth Amendment.

Although there is extensive case law addressing the specific circumstances when deadly force may be employed, the allegations presented here are "so far beyond the hazy border between excessive and acceptable force that [Officer Kinderknecht] had to know he was violating the Constitution even without [specific case law]." *Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir. 2003).  The law is clearly established that officers cannot use force that is "wholly unnecessary to any legitimate law enforcement purpose." *Lee v. Ferraro*, 284 F.3d

9

1188, 1199 (11th Cir. 2002). Officer Kinderknecht needed no specific case law to know that shooting Mr. Powell under the circumstances as provided in the First Amended Complaint violated his Fourth Amendment rights. When officers entered the home, Mr. Powell was in the kitchen getting a glass of water, possibly holding a skillet. (Doc. 1-1 at 73-74). Although he was disoriented, Mr. Powell was not acting erratically. (*Id.*at 74). Then, "during a conversation," three shots were fired, one fatally striking Mr. Powell in the abdomen. (*Id.*). To assume more would be improper at this stage of the litigation. Based on the facts pled, Officer Kinderknecht should not be afforded the protection of qualified immunity. Defendants' motion to dismiss is **DENIED** as to this claim. Defendants are not precluded from filing a summary judgment motion based on qualified immunity in the future.

### C. Wrongful Death Claim

Defendants argue Plaintiff McElroy cannot maintain a wrongful death claim against the City of Bessemer because an Alabama municipality cannot be sued for allegedly willful or intentional conduct of its officers or agents. (Doc. 6 at 4-5 & n. 3). In support, Defendants contend Alabama Code § 11-47-190 expressly limits municipal liability under the doctrine of *respondeat superior* to the negligent and careless acts of municipal employees of agents. (Docs. 6 at 4-5 & 10 at 2). As Defendants point out, the Alabama Supreme Court has consistently held as much, explaining "to construe this statute to include an action for wanton conduct would expand the language of the statute beyond its plain meaning." *Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991); *see also Walker v. City of Huntsville*, 62 So. 3d 474, 501 (Ala. 2010); *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993). Plaintiffs' focus on Alabama Code § 6-5-338 is misplaced. This statute, known as the Alabama peace officer immunity statute, is inapplicable because this claim is being asserted against the City only. The

wrongful death claim attempts to hold the City liability under the theory of *respondeat superior* based on Officer Kinderknecht and others' alleged "willful, malicious, intentional, and completely in bad faith" conduct, which is not permitted under Alabama law. ALA. CODE § 11-47-190; *Hilliard*, 585 So. 2d at 892; *see also Walker*, 62 So. 3d at 501; *Altmayer*, 613 So. 2d at 369. Because the claim attempts to impose municipal liability for alleged willful or intentional conduct based on a theory of *respondeat superior*, Defendants' motion is **GRANTED** as to the wrongful death claim.

## IV. Conclusion

Based on the foregoing, Defendants' motion to dismiss, (doc. 5), is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Plaintiffs' (1) § 1983 claim against the City of Bessemer only, (2) wrongful death claim, and (3) intentional infliction of emotional distress claim. The motion is **DENIED** as to the sole remaining claim, Plaintiffs' §1983 claim against Officer Kinderknecht. The parties are reminded of their obligations under the Federal Rules of Civil Procedure, including local rule variations. The parties should pay particular attention to Rules 7.1, 26 and 16.

DONE this 13th day of April 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE